NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHANYON HOOD,<br><br>    Plaintiff,<br><br>    v.<br><br>MERCER-BUCKS ORTHOPAEDICS, et al.,<br><br>    Defendants. | CIVIL ACTION NO. 14-3427 (MLC)<br><br>**MEMORANDUM OPINION** |

**COOPER, District Judge**

The Plaintiff, Shanyon Hood, initiated this action against two separate Defendants, Mercer-Bucks Orthopaedics ("MBO") and Mercer County Surgery Center ("MCSC"). (See dkt. entry no. 8, Am. Compl. at ¶¶ 5, 6.) Hood, who is profoundly deaf, sought medical treatment at the Defendants' facilities. (See id. at ¶¶ 4, 13, 20.) Her claims stem from the Defendants' alleged failure to provide access to live interpreter services during the course of medical treatment. (See generally id.) Hood seeks remedies, in part, under Title III of the Americans with Disabilities Act ("ADA") due to the Defendants' alleged failure to "provide reasonable accommodations for [her] disability and for discrimination based on disability." (See id. at ¶ 1.)

MBO now moves to dismiss the ADA claim insofar as it is asserted against it pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of standing. (See dkt. entry no. 12-1, MBO Br. at 3.) For the following reasons, the Court will deny the motion.

## BACKGROUND

Hood communicates through American Sign Language. (See Am. Compl. at ¶ 4.) She allegedly visited MBO from 2008 through 2013 to undergo "several surgeries," medical treatment, and physical therapy. (Id. at ¶ 13.)[1] According to Hood, throughout this time period, MBO failed to provide "any forms giving her notice of her communication options" and denied her requests for an interpreter. (Id.)

Although Hood's mother and friend accompanied her to MBO, neither companion "could help her communicate effectively" because her "mother does not sign and her friend is deaf." (Id.) Hood alleges that MBO provided an interpreter on January 7, 2009, however, she allegedly communicated with medical staff without this service on several occasions. (Id.) During several office visits, medical staff allegedly communicated with Hood through handwritten notes. (Id. at ¶¶ 13–14.) This practice, Hood alleges, prevented medical staff from addressing "many of her questions … while in the facility." (Id. at ¶ 14.)

Hood alleges that she visited MBO for physical therapy sessions as early as January 2009, however, the "staff made no attempts to obtain an interpreter" and continued to communicate through handwritten notes. (Id.) According to Hood, "all requests for interpreters were ignored." (Id.) This alleged oversight purportedly caused communication problems between Hood and the MBO medical staff, because she was "unable to participate in and ask questions about her medical treatment, diagnosis, [and] prognosis." (Id. at ¶ 15.)

---

[1] Because MCSC does not move to dismiss, the Court's factual analysis will be limited to the allegations regarding the care and treatment at MBO.

Hood identifies two dates that MBO staff allegedly denied her access to an interpreter. (Id. at ¶ 14.) Hood alleges, as one example, that MBO physician Dr. Eingorn documented that the July 20, 2011 visit was "complicated" because he "had to write everything out for" Hood. (Id.) As a second example, Hood alleges that MBO physician Dr. Aita documented that the "interpreter was not available" during a June 1, 2009 visit. (Id.) Dr. Aita allegedly communicated with Hood through "handwritten notes." (Id.)

Hood alleges that without an interpreter, she was "unable to communicate effectively [with MBO medical staff] during critical aspects of her treatment," because the conversations often concerned "her medical treatment … [and] diagnosis." (Id. at ¶ 15.) Hood also alleges that MBO required her to "sign consent forms and other forms involving procedures without an interpreter present." (Id. at ¶ 17.) According to Hood, due to MBO's failure to provide an interpreter, she "did not fully understand what treatment was to be performed on her and was often unaware of her diagnosis [and] prognosis." (Id.)

## STANDARD OF REVIEW

**I.   Governing Standard**

Hood argues that Rules 12(b)(6) and 12(f) govern MBO's motion. (See dkt. entry no. 16, Hood Br. at 2–3.) The Court rejects this argument, because a motion to dismiss for lack of standing implicates Rule 12(b)(1). Byers v. Intuit, Inc., 564 F.Supp.2d 385, 396 (E.D. Pa. 2008); Kessler Inst. for Rehab., Inc. v. Mayor & Council of Borough of Essex Fells, 876 F.Supp. 641, 653 n.2 (D.N.J. 1995) ("Although Defendants' Notice of Motion to Dismiss relies upon … Rule ... 12(b)(6), dismissal for failing to state a claim, lack of standing is more appropriately characterized as an absence of subject matter

3

jurisdiction, which is a basis for dismissal under … Rule 12(b)(1) and can be raised by the Court on its own initiative."). Accordingly, Rule 12(b)(1) governs the pending motion, because the standing challenge implicates this Court's subject matter jurisdiction. Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007) ("A motion to dismiss for want of standing is ... properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter.").

## II.     Method of Attack

When considering a Rule 12(b)(1) standing challenge, the Court must determine whether the attack is facial or factual. In re Schering Plough Corp. Intron/Temodar Class Action, 678 F.3d 235, 243 (3d. Cir. 2012). "A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because … it does not present a question of federal law, or because … some other jurisdictional defect is present." Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014). When reviewing a facial attack, a "court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Gould Elec. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). Although the plaintiff bringing an action in federal court bears the burden of establishing jurisdiction, upon reviewing a facial attack, a "court must consider the allegations of the complaint as true." Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

Factual attacks, in contrast, argue that subject matter jurisdiction is improper "because the facts of the case … do not support the asserted jurisdiction." Aichele, 757

4

F.3d at 358. The presumption of truth does not extend to factual attacks, "and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Mortensen, 549 F.2d at 891. Courts are permitted, however, to weigh and consider facts "outside the pleadings" to decide whether subject matter jurisdiction is proper. Aichele, 757 F.3d at 358.

**III.   Applicable Standard**

The Court has discretion to decide whether a Rule 12(b)(1) motion presents a facial or factual attack. Byers, 564 F.Supp.2d at 397. No party in this case raises a compelling argument to guide this determination. (See generally MBO Br.; dkt. entry no. 17, MBO Reply Br.; Hood Br.) MBO primarily argues that because Hood discontinued medical treatment at MBO, the Court cannot redress her ADA claim against it. (See generally MBO Br.; MBO Reply Br.) MBO, in support of this argument, cites precedent holding that a plaintiff must demonstrate that the Court can redress the alleged injury in order to establish standing. (See generally id.)

Hood counters that "[u]nder these circumstances … there is a 'real concrete threat' that [she] will once again be under [MBO's] care and that [MBO] will once again discriminate against her." (Hood Br. at 8) Because the dispute hinges upon a factual issue giving rise to subject matter jurisdiction, the Court finds that MBO brings a factual attack. See Aichele, 757 F.3d at 358. Accordingly, without granting Hood the presumption of truth, the Court will consider both parties' arguments and supplemental documents to determine whether jurisdiction is proper. Mortensen, 549 F.2d at 891.

5

## DISCUSSION

### I. Standing Limitation

MBO argues that Hood lacks standing to proceed with the ADA claim against it.  (See MBO Br. at 3.)  Standing limits Article III federal jurisdiction under the case or controversy requirement of the United States Constitution.  Newark Branch, NAACP v. Town of Harrison, 907 F.2d 1408, 1412–13 (3d Cir. 1990).  The standing limitation requires that a plaintiff allege "such a personal stake in the outcome of the controversy so as to warrant … federal court jurisdiction and to justify exercise of the court's remedial powers on the plaintiff's behalf."  Id. at 1412.  "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed."  Common Cause of Pa. v. Pennsylvania, 558 F.3d 249, 257 (3d Cir. 2009).

A plaintiff must establish the following in order to demonstrate standing: (1) an "injury in fact" occurred; (2) the injury is linked to the defendant's acts at issue in the case; and (3) it is likely, as opposed to merely speculative, that a favorable decision will redress the injury.  Friends of the Earth v. Laidlaw Envtl. Servs., 528 U.S. 167, 180 (2000).  An Article III injury in fact must be "actual or imminent, not conjectural or hypothetical."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal quotation omitted); see also City of Los Angeles v. Lyons, 461 U.S. 95, 101–02 (1983) (explaining that "plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical") (internal quotation omitted); Navegar, Inc. v. United States, 103 F.3d 994,

998 (D.C. Cir. 1997) (holding that litigant only has standing based on a threatened future injury if she can demonstrate that the injury "is credible and immediate, and not merely abstract or speculative").

Standing is not merely a pleading requirement "but rather an indispensable part of the plaintiff's case, [and therefore] each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." Lujan, 504 U.S at 561.  A plaintiff bringing an ADA claim must establish standing, because Article III "judicial power exists only to redress or otherwise to protect against injury to the complaining party." Warth v. Seldin, 422 U.S. 490, 499 (1975); see also Doe v. Nat'l Bd. of Med. Exam'rs, 199 F.3d 146, 153 (3d Cir. 1999).  The redressability element of the standing doctrine requires that a plaintiff "justify exercise of the court's remedial powers on his behalf." Schering, 678 F.3d at 244 (internal citation omitted).

**II.     Application**

MBO argues that Hood fails to demonstrate redressability under the standing doctrine.  (See generally MBO Br.; MBO Reply Br.)[2]  In this regard, MBO argues that Hood cannot establish standing, because she fails to establish that she "has treated with [MBO] since 2013, sought treatment with [MBO] since 2013, or that there is any definitive need for ongoing treatment after 2013."  (MBO Br. at 7.)

MBO, in support of this argument, asserts that the amended complaint "relies upon notes in [Hood's] medical records from June 1, 2009 and July 20, 2011."  (MBO Br. at 2

---

[2] Because MBO raises no other standing-related arguments, the Court's analysis will be limited to this element.

7

(emphasis in original).)  MBO also references treatment dates stated in the amended complaint to suggest that Hood discontinued treatment at MBO in 2013.  (See id. at 3, 7.)  Synthesizing these assertions, MBO argues that the "mere speculation of an intent to return is insufficient to establish standing for a Title III ADA claim."  (Id. at 7.)

Hood, in response to this argument, concedes that she "is not at this time under … active treatment" at MBO.  (Hood Br. at 3.)  Notwithstanding that concession, Hood alleges that "she continues to have pain and does in fact anticipate a return to defendant's facilities in the future" for the evaluation and treatment of "ongoing" injuries.  (Id. at 3, 7.)  Hood points to her "numerous surgeries" and six-year history of outpatient treatment at MBO, which included physical therapy, to demonstrate that "it is quite likely … that she will require defendant['s] services in the future and that her disabilities will once again fail to be accommodated."  (Id.)  Hood also argues MBO's longstanding discriminatory "policies, patterns, and practices" pose a "real and concrete threat" that she "will once again be under [MBO's] care and that MBO will once again discriminate against her."  (Id. at 7–8.)

Hood provides two MBO documents to bolster her claim that "she continue[s] to have issues and … [will visit MBO] … for her ongoing orthopedic issues as she has for the past six years."  (See id. at 4; dkt. entry no. 16-1, 6-21-13 Operative Report; dkt. entry no. 16-2, 11-19-13 Medical Record.)  The first document, styled "Operative Report," states that MBO admitted Hood on June 21, 2013 for the surgical treatment of "recurrent tendonitis."  (6-21-13 Operative Report at 1.)  The majority of the report summarizes the surgical procedure.  (See generally id.)  The report also states that Hood's preoperative

8

diagnosis was "recurrent lateral epicondylitis" of the right elbow, and postoperative diagnoses were "recurrent lateral epicondylitis" of the right elbow and "synovitis." (Id. at 1.) The second document, which appears to be an occupational therapy medical record dated November 19, 2013, states that Hood continued to experience "pain in [her] elbow." (11-19-13 Medical Record.)

      Hood's recent visits to MBO for the evaluation and treatment of "recurrent" medical problems create a reasonable inference that she will likely visit MBO in the future, thereby satisfying the redressability requirement. See Friends of the Earth, 528 U.S. 167 at 180–81. Hood alleges, for example, that "she continues to have issues and uses defendant facility as her treating doctors for her ongoing orthopedic issues as she has for the past six years." (Hood Br. at 4.) MBO offers no compelling argument to demonstrate that Hood's longstanding and "recurrent" medical issues – as described in the MBO documents – have resolved. (See generally MBO Br.; MBO Reply Br.) Nor does MBO establish that Hood will seek medical care at an alternate medical facility. (See generally MBO Br.; MBO Reply Br.) Accordingly, the Court finds that a favorable decision will likely redress Hood's alleged injury. The Court will deny the motion to dismiss the ADA claim insofar as it applies to MBO.

## CONCLUSION

For the reasons stated above, the Court will deny the motion to dismiss the ADA claim insofar as it applies to MBO without prejudice. The Court will issue an appropriate order.

                                              s/ Mary L. Cooper  
                                              **MARY L. COOPER**  
                                              United States District Judge

Date: October 28, 2014